### IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| KENNETH LEE SHOWELL, | : | |
| | : | CIVIL ACTION |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | NO.   14-7081 |
| CAROLYN W. COLVIN, | : | |
| Acting Commissioner of Social Security, | : | |
| | : | |
| Defendant. | : | |

**MEMORANDUM**

**SCHMEHL, District Judge   /s/ JLS**                                    **June 30, 2016**

Currently pending before the Court are Plaintiff Kenneth Lee Showell's Objections to the

Report and Recommendation of United States Magistrate Judge Linda K. Caracappa.   The Court

overrules the Objections, adopts the Report and Recommendation, and affirms the decision of the

Commissioner of Social Security.

**I.        PROCEDURAL HISTORY**

On June 30, 2011, Plaintiff Kenneth Lee Showell, then fifty-years old, filed a protective

application for Supplemental Security Income ("SSI") pursuant to Title XVI of the Social

Security Act, 42 U.S.C. § 1381, <u>et seq.</u>   (R. 145–151.)[1]   His claim alleged disability since

April 14, 2011, due to diabetes, together with right knee and shoulder problems.   (<u>Id.</u> at 145,

164.)   The state agency denied Plaintiff's application on October 19, 2011, and again on May 10,

2012, after an informal remand.   (R. 79–94.)   Plaintiff timely requested a hearing before an

administrative law judge ("ALJ").   (Id. at 95–97.)   ALJ Regina Warren conducted a hearing on

April 5, 2013, at which time both Plaintiff and a vocational expert testified.   (Id. at 39–78.)   On

April 26, 2013, ALJ Warren issued her decision deeming Plaintiff "not disabled."   (Id. at

20–37.)   Plaintiff filed an appeal from this decision and, on October 20, 2014, the Appeals

Council denied Plaintiff's request for review, making the ALJ's ruling the final decision of the

agency.   (Id. at 1–3; 17–18.)

Plaintiff initiated the present civil action in this Court on December 15, 2014.   His

Request for Review set forth three alleged errors: (1) the ALJ improperly discounted evidence of

kidney disease caused by diabetes; (2) the ALJ improperly discounted evidence of neuropathy

caused by diabetes; (3) the ALJ failed to consider the impact of the combination of impairments.

On November 30, 2015, United States Magistrate Judge Linda K. Caracappa issued a Report and

Recommendation ("R&R") recommending that Plaintiff's Request for Review be denied.

Plaintiff filed Objections to the R&R on December 8, 2015.   Plaintiff now contends that:

(1) the Magistrate Judge improperly determined that the ALJ's failure to discuss Plaintiff's

microalbumin levels and evidence of diabetes-related kidney disease is not cause for remand; (2)

the Magistrate Judge incorrectly affirmed the ALJ's finding that the Plaintiff could perform light

work despite his diabetes-related neuropathy; and (3) the Magistrate Judge improperly found that

the ALJ did not err in failing to limit Plaintiff to sedentary work based on fatigue resulting from

his diabetes.   Defendant responded to these Objections on December 10, 2016.

---

[1]   Citations to the administrative record will be referenced as "R. [page number]."

## II.    STANDARD OF REVIEW[2]

### A.    Standard for Judicial Review of an ALJ's Decision

It is well-established that judicial review of the Commissioner's decision is limited to determining whether "substantial evidence" supports the decision.    Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 118 (3d Cir. 2000).    "Substantial evidence 'does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"    Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999) (quoting Pierce v. Underwood, 487 U.S. 552, 564–65 (1988)).    When making this determination, a reviewing court may not undertake a de novo review of the Commissioner's decision and may not re-weigh the evidence of record.    Monsour Med. Ctr. v. Heckler, 806 F.2d 1185, 1190 (3d Cir. 1986).    In other words, even if the reviewing court, acting de novo, would have decided the case differently, the Commissioner's decision must be affirmed if it is supported by substantial evidence.    Id. at 1190–91; see also Gilmore v. Barnhart, 356 F. Supp. 2d 509, 511 (E.D. Pa. 2005) (holding that the court's scope of review is "'limited to determining whether the Commissioner applied the correct legal standards and whether the record, as a whole, contains substantial evidence to support the Commissioner's findings of fact'") (quoting Schwartz v. Halter, 134 F. Supp. 2d 640, 647 (E.D. Pa. 2001)).    In an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence."    Consolo v. Fed. Maritime

---

[2]   The five-step sequential analysis for assessing a disability claim was adequately summarized by the Magistrate Judge.   In lieu of repeating that discussion, the Court incorporates by reference that portion of the R&R into this Memorandum.

Comm'n, 383 U.S. 607, 620 (1966).

### B.      Standard of Review of Objections to a Report and Recommendation

Where a party makes a timely and specific objection to a portion of a report and

recommendation by a United States Magistrate Judge, the district court is obliged to engage in de

novo review of only those issues raised on objection.   28 U.S.C. § 636(b)(1); see also Sample v.

Diecks, 885 F.2d 1099, 1106 n.3 (3d Cir. 1989).   In so doing, a court may "accept, reject, or

modify, in whole or in part, the findings and recommendations" contained in the report.   28

U.S.C. § 636(b)(1).   The court may also, in the exercise of sound judicial discretion, rely on the

Magistrate Judge's proposed findings and recommendations.   See United v. Raddatz, 447 U.S.

667, 676 (1980).

## III.   DISCUSSION

### A.      Failure to Discuss Plaintiff's Evidence of Kidney Disease

Plaintiff's first Objection concerns the ALJ's treatment of evidence regarding Plaintiff's

diabetes-related kidney disease.   In his Request for Review, Plaintiff argued that both his

endocrinologist and his primary care physician provided records showing that Plaintiff has

elevated microalbumin levels related to his diabetes.   Such urinary microalbuminuria is

described in the Social Security Ruling regarding evaluation of Diabetes Mellitus as follows:

> Diabetic nephropathy is damage to the kidneys caused by chronic hyperglycemia.
> When the kidneys are damaged, protein leaks out of the kidneys into the urine.
> Damaged kidneys can no longer remove waste and extra fluids from the
> bloodstream. Diabetic nephropathy is a leading cause of end-stage renal disease.
> Careful management of blood glucose levels, together with the reduction of a
> co-morbid condition such as high blood pressure, may slow the damage.

SSR 14-2P, 2014 WL 2472008, at *4 (June 2, 2014).   According to Plaintiff, the ALJ failed to

mention the evidence of his kidney disease as a result of his uncontrolled diabetes and, thus, failed to consider a crucial impairment.

On review, the Magistrate Judge agreed that although the ALJ did not specifically discuss Plaintiff's microalbumin levels, the ALJ specifically cited to every record containing said levels, thereby demonstrating consideration of those records.   Moreover, the Magistrate Judge found that any failure by the ALJ in that regard was not cause for remand given the absence of (a) medical records indicating that Plaintiff's microalbuminuria leads to any specific functional limitations; and (b) an explanation by Plaintiff of how a discussion of the microalbumin levels would have impacted the ALJ's findings.

The Court agrees with the Magistrate Judge's assessment.   To establish a disability under the Social Security Act, a claimant must demonstrate that there is some "'medically determinable basis for an impairment that prevents him from engaging in any "substantial gainful activity" for a statutory twelve-month period.'"   Stunkard v. Secretary of Health & Human Servs., 841 F.2d 57, 59 (3d Cir. 1988) (quoting Kangas v. Bowen, 823 F.2d 775, 777 (3d Cir. 1987)); see also 42 U.S.C. § 423(d)(1)(A).   "Mere presence of a disease or impairment is not enough.   A claimant must show that his disease or impairment caused functional limitations that precluded him from engaging in any substantial gainful activity."   Walker v. Barnhart, 172 F. App'x 423, 426 (3d Cir. 2006).   While abnormal laboratory findings can be relevant to the assessment of residual functional capacity, the ultimate determination is based on "limitations and restrictions attributable to medically determinable impairments."   SSR 96-8p, 1996 WL 374184, at *2 (July 2, 1996).

In the present case, the ALJ acknowledged that Plaintiff has a fairly long history of

diabetes and suffers various associated symptoms.   The ALJ went on to provide — over the

course of six pages—a detailed, chronological description of Plaintiff's medical records,

complaints, and physicians' opinions.   (R. 29–35.)   Although the ALJ did not specifically

discuss the microalbumin levels, "[t]here is no requirement that the ALJ discuss in its opinion

every tidbit of evidence included in the record."   Hur v. Barnhart, 94 F. App'x 130, 133 (3d Cir.

2004).   This principle is particularly pertinent here where Plaintiff has not cited, and this Court

cannot find, any record evidence that Plaintiff (a) was experiencing kidney failure; (b) was

referred to or undergoing treatment with a nephrologist; or (c) suffered actual limitations caused

by the presence of microalbumin in his urine.   If anything, these laboratory reports showed only

that Plaintiff suffered from an unmanaged condition of diabetes mellitus—a fact which the ALJ

expressly accounted for in defining Plaintiff's residual functional capacity.[3]   Given the propriety

of the ALJ's analysis, Plaintiff's Objection on this ground is denied.

   **B.     The ALJ's Residual Functional Capacity Analysis Limiting Plaintiff to Light**
           **Work Instead of Sedentary Work**

   Plaintiff next takes issue with the ALJ's residual functional capacity ("RFC") assessment

---

[3]   Plaintiff cites Roberts v. Colvin, No. Civ.A.13-14675, 2015 WL 181658 (E.D. Mich. Jan. 14,
2015) for the proposition that an ALJ's failure to mention elevated microalbumin levels
undermines the ALJ's disability determination.   In Roberts, the ALJ had failed to mention
multiple important pieces of medical evidence.   With respect to the claimant's diabetes, the
court noted that "[w]hile [the ALJ] cited the fact that Dr. Whitmyer's notes stated that Roberts's
disease was 'not uncontrolled' and that Roberts presented 'without mention of complication,' she
failed to acknowledge that in the same treatment record, Dr. Whitmyer noted that despite being
placed on Lisinopril or elevated microalbumin, Robert's levels had worsened . . . . she also failed
to note that this was the second time Roberts's microalbumin levels had been documented as
worsening instead of improving, despite treatment."   Id. at *10.   As such, the elevated
microalbumin levels in that case directly undermined the ALJ's findings.   By contrast, in this
matter, the ALJ explicitly found that Plaintiff experienced several complications from diabetes,
but did not mention the elevated microalbumin levels since there was no evidence of any
associated limitations.

limiting Plaintiff to light work instead of sedentary work.   "'Residual Functional Capacity is

defined as that which an individual is still able to do despite the limitations caused by his or her

impairment(s).'"   Fargnoli v. Massanari, 247 F.3d 34, 40 (3d Cir. 2001) (quoting Burnett v.

Comm'r of Soc. Sec., 220 F.3d 112, 121 (3d Cir. 2000)) (quotations omitted); 20 C.F.R. §

416.945(a)(1).   In making a residual functional capacity determination, the ALJ must consider

all evidence before him or her.   Burnett, 220 F.3d at 121.   "Limitations that are medically

supported and otherwise uncontroverted in the record," must be included in the RFC assessment.

Rutherford v. Barnhart, 399 F.3d 546, 554 (3d Cir. 2005).   "Limitations that are medically

supported but are also contradicted by other evidence in the record may or may not be found

credible—the ALJ can choose to credit portions of the existing evidence but 'cannot reject

evidence for no reason or for the wrong reason.'"   Id.   Finally, "limitations that are asserted by

the claimant but that lack objective medical support may possibly be considered nonetheless

credible."   Id.

The ALJ in this case engaged in an exceedingly thorough discussion of the record and

concluded that Plaintiff had the residual functional capacity for "light work[4] with the need to

---

[4]   Under the regulations,

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.  To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.  If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

 20 C.F.R. § 416.967(b)

avoid extreme heat, humidity, unprotected heights and hazards," which accounted for Plaintiff's

"diabetes as well as his nonsevere aneurysm, hypertension, right knee and left shoulder problems

and obesity."   (R. 34.)   The ALJ went on to remark that,

> While claimant argued at the hearing that the claimant should be limited to sedentary work,[5] I find that his only severe impairment is diabetes and related symptoms and that if he were compliant with medication and his treating doc[tor]'s recommendations for diet and following other recommendations including checking blood sugars regularly, stop smoking and drinking alcohol and to start exercising, his condition would improve.   In fact, the records discussed in detail above show that when he follows his doctor's advice, his condition does in fact improve.   Even so, the treatment notes do not support finding him limited to sedentary work.   The feet tingling/numbness seems to have improved with Gabapention . . . .   On physical exam in November 2012, the claimant had stocking hypoesthesia and deep tendon reflexes were symmetrically decreased, but cranial nerves were grossly intact.   He had no motor weakness.   Balance, gait and coordination were intact . . . .   He does not use an assistive device.   While the claimant testified that he has very limited activities of daily living, in the function report, he indicated that he can do many things for himself . . .

(R. 34–35.)

Plaintiff now raises two challenges to this assessment.   First, he objects to the ALJ's

assumption that his diabetic neuropathy improves when he is compliant with prescribed

treatment therapies.   Second, he asserts that, in reaching the RFC assessment, the ALJ gave too

much weight to consultative examiner Dr. Yankelevich.

---

[5]  "Sedentary work"

> involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools.   Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties.   Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

### 1.      Reliance on Plaintiff's Non-Compliance With Treatment

Plaintiff first takes issue with the ALJ's statement regarding his noncompliance with medical treatment.   During her extensive review of the medical evidence of record, the ALJ found numerous instances of Plaintiff's noncompliance correlating with worsened symptomology and compliance correlating with improved symptomology.   Thereafter, the ALJ discounted Plaintiff's claimed limitation to sedentary work on the grounds that many of Plaintiff's neuropathy symptoms improve when he is compliant with his doctor's recommendations as to diet, blood sugar checks, smoking cessation, and an exercise regime.   On review, the Magistrate Judge concurred with this analysis and found that substantial evidence supported a finding that Plaintiff experienced improvement when compliant with medication.   In addition, the Magistrate Judge remarked that other evidence bolstered the ALJ's credibility and RFC assessment. Finally, the Magistrate Judge observed that, aside from Plaintiff's own testimony, the medical record was devoid of any limitations on Plaintiff's ability to stand and/or walk.   Plaintiff now asserts that the Magistrate Judge's concurrence with the ALJ's analysis, "fails to recognize that diabetic neuropathy is by definition 'permanent nerve damage,'" meaning that it cannot improve with compliance, and that the evidence pointed to by the Magistrate Judge does not show that Plaintiff no longer has symptoms of diabetes when he is compliant with medication.   (Pl.'s Objections 4.)

The Court again agrees with the Magistrate Judge's assessment.   In evaluating the credibility of a claimant's subjective complaints, an ALJ must consider the conflicts between the claimant's statements and other evidence, including her medical history, medical signs and

---

20 C.F.R. § 416.967(a).

laboratory findings, and statements by the medical sources. 20 C.F.R. § 416.929(c)(4), 416.908;

see also Schaudeck v. Comm'r, 181 F.3d 429, 433 (3d Cir. 1999).   A claimant's allegations

alone will not establish that she is disabled, and an ALJ need not accept subjective complaints

unsupported by the medical evidence.   20 C.F.R. § 416.929(a).   Although the ALJ must

seriously consider a claimant's subjective complaints, it is within the ALJ's discretion to weigh

such complaints against the medical evidence, and to reject them if he/she does not deem them

credible.   Schaudeck, 181 F.3d at 433.

In addition to the objective medical evidence, the kinds of evidence that the ALJ must

consider when assessing the credibility of an individual's statements include: the individual's

daily activity; location, duration, frequency, and intensity of the individuals symptoms; factors

precipitating and aggravating the symptoms; the type, dosage, effectiveness, and side effects of

medication taken to alleviate the symptoms; treatment, other than medication, received for relief

of the symptoms; any non-treatment measures the individual uses to relieve pain or symptoms;

and other factors concerning the individual's functional limitations and restrictions due to pain or

other symptoms.   20 C.F.R. § 416.929(c)(3).   Moreover, the ALJ should account for the

claimant's statements, appearance, and demeanor; medical signs and laboratory findings; and

physicians' opinions regarding the credibility and severity of plaintiff's subjective complaints.

Weber v. Massanari, 156 F. Supp. 2d 475, 485 (E.D. Pa. 2001) (citing SSR 96–7p, 1996 WL

374186 (S.S.A. July 2, 1996)).   An ALJ may consider a claimant's failure to follow a prescribed

treatment plan as a factor in assessing credibility.   Vega v. Comm'r of Soc. Sec., 358 F. App'x

372, 375 (3d Cir. 2009); Lozado v. Barnhart, 331 F. Supp. 2d 325, 340 (E.D. Pa. 2004).

In the present case, Plaintiff testified at the hearing that he was limited in standing and

walking, and could only walk between five to ten minutes at a time because of dizziness.   (R.

49–51.)   He also stated that his feet would throb due to diabetic-related neuropathy.   (Id. at

52–53.)   None of Plaintiff's treating physicians, however, placed any limitations on Plaintiff's

ability to stand or walk.   Indeed, the record reflects that, although Plaintiff complained of

tingling and burning in his feet during multiple office visits, no doctor ever commented on

Plaintiff's limited ambulatory ability.   For example, in November 2011, Plaintiff's feet had

normal sensation to pinprick, and he had no motor weakness or problems with balance and gait.

(Id. at 238.)   In May 2012, physical examination of his extremities was normal and he had no

motor weakness.   (Id. at 529, 597.)   Although Plaintiff had diminished sensation to pinprick in

June and August 2012, he still had no motor weakness and his balance and gait were intact.   (Id.

at 533, 538.)   The sole doctors to opine on Plaintiff's work-related limitations were Dr.

Yankelevich, the consultative examiner, and Craig Billinghurst, M.D., the state agency medical

consultant.   Neither gave Plaintiff any limitations on his ability to stand or walk.   (Id. at

209–10; 260–68.)

The record was also replete with comments on Plaintiff's noncompliance with prescribed

treatment and notations of improvement when he was compliant.   By way of example:

- On January 13, 2011, Plaintiff had not been checking his sugars for three days because he
  ran out of test strips.   (Id. at 460.)   Later that month, Dr. Zacharias, Plaintiff's primary
  care doctor, reported that Plaintiff was noncompliant with diet and exercise, and
  continued using tobacco.   (Id. at 567.)   His glucose levels were high and he complained
  of burning in his extremities.   (Id. at 460–63.)

- On January 28, 2011, Plaintiff was deemed "noncompliant with diet and with exercise."
  (Id. at   467.)   In addition, he continued to use alcohol and tobacco.   (Id.)

- On February 4, 2011, Plaintiff was reported to be compliant with his medication.
  Examination showed Plaintiff's condition was stable with no evidence of systemic
  disease.   (Id. at 471–74.)

- On February 17, 2011, Plaintiff had been compliant with medication, but not compliant with his diet, and had high blood sugar and episodes of dizziness.   (Id. at 475–78.)

- On March 24, 2011, Dr. Zacharias, Plaintiff's primary care doctor, commented that Plaintiff had been compliant with medication, follow-up, and educational materials.   He had had no hypoglycemic episodes for the last week.   (Id. at 383.)

- On July 26, 2011, Plaintiff had not been taking his Metaformin for at least three weeks and had not taken his blood sugars because he dropped his meter.   Dr. Zacharias reported that he was "[n]on- compliant with current therapy."   Plaintiff had suffered an episode of hypoglycemia.   (Id. at 396–98.)

- In August 2011, Plaintiff had been adhering to his medication, but not to a diet for diabetes management.   Plaintiff was experiencing intermittent dizziness.   (Id. at 642.)

- In October of 2011, Plaintiff was not adhering to diet and exercise recommendations for his diabetes.   (Id. at 627.)

- On November 10, 2011, Dr. Zacharias reported that Plaintiff's status, specifically, his foot tingling, had improved consistent with medicating and eating less.   (Id. at 622.)

- As of August 2012, Plaintiff's diet and exercise were "better, (id. at 535), but he continued to smoke cigarettes, (id. at 517), and as of November 2012, still used alcohol. (Id. at 545.)

Ultimately, the ALJ found Plaintiff's claimed limitations from his neuropathy not entirely

credible in light of his treatment non-compliance, combined with unremarkable physical

examinations, non-use of an assistive device, and an ability to perform many daily tasks for

himself.   While Plaintiff contends that there are multiple records of office visits documenting

complaints of dizziness, foot pain, and tingling even with compliance, the ALJ explicitly

considered and discussed each of these notations.   Indeed, the ALJ's discussion of the medical

record was comprehensive and reflected a studied review of the evidence before her.   As such,

the ALJ properly remarked, based on the medical record, that if Plaintiff followed his doctor's

recommendations for diet, smoking and alcohol cessation, exercise, and medication use, his

symptoms would improve.   The Court finds that such a credibility analysis comports with the

Social Security regulations and is well supported by substantial evidence.

In an alternative argument, Plaintiff contends that Social Security Ruling 82-59 required

the ALJ to consider possible reasons for Plaintiff's non-compliance, including his reports of

depression.   SSR 82-59 provides that "[a]n individual who would otherwise be found to be

under a disability, but who fails without justifiable cause to follow treatment prescribed by a

treating source which the Social Security Administration (SSA) determines can be expected to

restore the individual's ability to work, cannot by virtue of such 'failure' be found to be under a

disability."   SSR 82–59, 1982 WL 31384, at *1 (Jan. 1, 1982).   The ruling goes on to provide

that, "[w]here the treating source has prescribed treatment clearly expected to restore ability to

engage in [substantial gainful activity (SGA)], but the disabled individual is not undergoing such

treatment, appropriate development must be made to resolve whether the claimant . . . is

justifiably failing to undergo the treatment prescribed. . . . The claimant . . . should be given an

opportunity to fully express the specific reason(s) for not following the prescribed treatment."

Id. at *2.   Plaintiff now contends that the ALJ's failure to fully develop the impact of his

depression on his compliance with treatment requires that he be awarded benefits.

Plaintiff's argument misunderstands the dictates of this Ruling.   For SSR 82-59 to be

applicable, there must have been a determination by the ALJ that "the individual's impairment

precludes engaging in any substantial gainful activity (SGA)."   Id. at *1.   Where, on the other

hand, the ALJ bases the denial of benefits on an ability to return to substantial gainful activity

based, this ruling is not relevant.   See Vega v. Comm'r of Soc. Sec, 358 F. App'x 372, 375 (3d

Cir. 2009); see also Thomas v. Barnhart, No. Civ.A.02–2958, 2003 WL 21419154, at *5 (E.D.

Pa. June 11, 2003) (finding SSR 82–59 did not apply to a individual who was found not to have a

disabling impairment); Rothrock v. Massanari, No. Civ.A.00–4912, 2001 WL 881450, at *5

(E.D. Pa. June 12, 2001) (finding SSR 82–59 inapplicable to the ALJ's credibility determination

because the claimant's impairments did not preclude her from engaging in substantial gainful

activity).   In this case, the ALJ rested her finding of non-disability on Plaintiff's ability to return

to substantial gainful activity despite his impairments.   As the ALJ cited evidence of treatment

non-compliance only in assessing the claimant's credibility,[6] she was not required to engage in

the analysis dictated by SSR 82-59 to determine whether that non-compliance was justified due

to Plaintiff's alleged depression.[6]   Lozado v. Barnhart, 331 F. Supp. 2d 325, 340 (E.D. Pa.

2004).

In short, the ALJ properly concluded that Plaintiff's claims of limitation to sedentary

work were not fully credible.   Accordingly, the Court denies Plaintiff's Objection on this

ground.

### 2.      Reliance on Dr. Yankelvich's Findings

In a second challenge to the ALJ's RFC assessment, Plaintiff contends that the ALJ gave

---

[6]   Plaintiff asserts that "[t]he ALJ gave no indication that she was considering compliance to be an issue of credibility; therefore SSR 96-7p regarding assessment of credibility is inapplicable." (Pl.'s Objections 8–9.)   Plaintiff is incorrect.   The only evidence of Plaintiff's limitations on his ability to stand/walk is Plaintiff's own testimony at the hearing.   The ALJ specifically stated that she was rejecting that testimony because "if he were compliant with medication and his treating doc[tors'] recommendations for diet and followed other recommendations including checking blood sugars regularly, stop smoking and drinking alcohol and to start exercising, his condition would improve."   (R. 34–35.)

[6]   In any event, Plaintiff identifies only two brief mentions of depression in the medical records. (R. 556, 560.)   He points to no evidence—either in the treatment notes or in his own testimony—suggesting any doctors were concerned that his depression may be causing his noncompliance with prescribed therapy.

too much weight to the one-time exam findings of consultative examiner, Dr. Yankelevich.   Dr.

Yankelevich examined Plaintiff and issued a report dated September 28, 2011.   (R. 260–67.)

His medical source statement found that Plaintiff could "lift/carry 10 pounds frequently, has no

limitations standing/walking, sitting or pushing/pulling, can occasionally crouch, balance and

climb, and can frequently bend, kneel and stoop."   (R. 34.)   The ALJ analyzed this opinion as

follows:

> I give some weight to Dr. Yankelevich's medical source statement.   Although not a treating source, Dr. Yankelevich was able to personally examine the claimant.   I disagree with Dr. Yankelevich's finding regarding the ability to lift/carry only 10 pounds.   Rather, I find that the claimant can lift at the light level of exertion.   Dr. Yankelevich made his findings prior to the claimant's left shoulder surgery.   As discussed above, with surgery, the claimant improved.   Dr. Yankelevich's exam of the claimant was relatively normal.   He had normal stance and ambulation and was in no obvious distress.   His upper extremities had full range of motion, good dexterity and he was able to oppose all fingers in both hands.   There was no swelling, redness, tenderness or deformity of the joints and no muscle atrophy.   His lower extremities had full range of motion, no edema or ulcer, no swelling, tenderness, redness or deformity of joints and no muscle atrophy.   He was able to get on and off the exam table and disrobe without difficulty.   Cranial nerves and motor were intact.   Strength was 5/5 throughout.

(R. 34.)   The Magistrate Judge affirmed the ALJ's discussion of this medical assessment.

Medical and psychological consultants of a state agency who evaluate a claimant based

upon a review of the medical record "are highly qualified physicians and psychologists who are

also experts in Social Security disability evaluation.   Therefore, administrative law judges must

consider findings of State agency medical and psychological consultants or other program

physicians or psychologists as opinion evidence, except for the ultimate determination about

whether [a claimant is] disabled."   20 C.F.R. § 416.927(e)(2)(i); see also SSR 96–6p, 1996 WL

374180 (July 2, 2996) ("Findings of fact made by State agency medical and psychological

consultants and other program physicians and psychologists regarding the nature and severity of

an individual's impairment(s) must be treated as expert opinion evidence of nonexamining

sources at the administrative law judge and Appeals Council levels of administrative review . . . .

Administrative law judges and the Appeals Council may not ignore these opinions and must

explain the weight given to these opinions in their decisions."); Chandler v. Comm'r of Soc.

Sec., 667 F.3d 356, 361 (3d Cir. 2011) (noting that state agency consultant opinions merit

significant consideration).

Plaintiff contends that the ALJ's ruling improperly disregards later progress notes that

contradict Dr. Yankelevich's findings regarding Plaintiff's ability to stand or walk.   For

example, Plaintiff asserts that treating physician Dr. Wali noted in September, October, and

November 2012, that Plaintiff had stocking hypoesthesia, which is abnormally decreased

sensation to touch.   (R. 547, 556, 561.)   In addition, treating physician Dr. Plotzker noted, on

June 27, 2012, that Plaintiff had decreased sensation to pinprick in bilateral feet with impaired

vibratory perception.   (R. 533, 584.)   Because Dr. Yankelevich did not review such records,

Plaintiff contends that his assessment of Plaintiff's standing/walking ability was incomplete and

should not have been given any weight.

Plaintiff's argument is misplaced.   Although numerous doctors noted that Plaintiff was

experiencing decreased sensation to pinprick in his feet—evidencing some degenerative

neuropathy—the record is devoid of evidence subsequent to Dr. Yankelevich's examination that

would undermine the finding that Plaintiff could stand/walk without limitation.   For example, in

May, August, and October 2012, Plaintiff treated with podiatrist Peter King, who remarked that

Plaintiff had decreased sensation in his feet, but suffered pain due to "painful nails, painful

lesions." (R. 515–20.) At all three appointments, Dr. King debrided and burred Plaintiff's nails and removed fungal debris "to help restore a pain free ambulation." (R. 516, 518, 520.) No limitations were imposed on Plaintiff's standing or walking. Notes by Dr. Plotzker from May to October 2012 revealed some decreased sensation to pinprick in Plaintiff's feet, but those notes repeatedly remarked on the absence of motor weakness, and Plaintiff's intact balance and gait. (R. 529, 533, 538.) Likewise, Dr. Wali's progress notes from November 2011 onward vary between notations and decreased sensation to pinprick, but all of them unanimously reflect no motor weakness, with intact balance and gait. (R. 547, 556, 561, 566, 569, 573, 580, 584, 592, 597, 601, 609.)

The Court finds no error in the ALJ's reliance on Dr. Yankelevich. As set forth in detail above, the ALJ rested his finding that Plaintiff was unlimited in standing/walking on the entirety of the record. He did not simply rubberstamp Dr. Yankelevich's opinion and adopt it as the RFC. Rather, the doctor's opinion simply confirmed what the remainder of the evidence already showed. The mere fact that medical records existed after Dr. Yankelevich rendered his opinion does not detract from the weight to be given that opinion, particularly in light of the fact that the subsequent records were consistent with his assessment.[7] Therefore, the Court rejects this

---

[7] Plaintiff cites several cases for the proposition that remand is required where an ALJ relies on an assessment by a medical consultant who reviewed some earlier records in the file, but did not consider later objective findings by treating providers. These cases, however, do not support any remand in this matter. In Stover v. Shalala, No. Civ.A.94-1910, 1995 WL 327981, at *6 (E.D. Pa. May 31, 1995), for example, the ALJ referred to the results of a 1989 MRI and earlier statements by a treating physician in order to determine that the physician's later assessment of limiting impairment was not entitled to any weight. Id. at *6. The court found that this was improper in light of the degenerative nature of the claimant's disease. Id. In this case, on the other hand, the record, both before and after Dr. Yankelevich's assessment, does not reflect the presence of any severe degeneration that impacted Plaintiff's ability to stand or walk.
Likewise, in Austin v. Colvin, No. Civ.A.13-2878, 2015 WL 4488333 (M.D. Pa. July 23,

portion of Plaintiff's Objections.

### C.      Failure to Consider Plaintiff's Allegations of Fatigue

Plaintiff's final Objection asserts that the ALJ did not consider the impact of his fatigue

on his ability to sustain work that involves walking and standing six hours in an eight-hour work

day.   Plaintiff contends that numerous medical notations list fatigue as a symptom of Plaintiff's

diabetes.   Yet the ALJ never mentioned fatigue or its impact on Plaintiff's ability to perform

light work.     The Magistrate Judge affirmed the ALJ's ruling on the ground that the ALJ

discussed every medical record wherein fatigue was listed.   Plaintiff now asserts that the

Magistrate Judge was incorrect and the ALJ's failure to consider his fatigue deprives the RFC of

the support of substantial evidence.

Again, the Court finds no error in the ALJ's ruling.   In support of his argument, Plaintiff

provides a lengthy list of citations which purportedly demonstrate his fatigue resulting from his

diabetes.   The ALJ, while not specifically mentioning fatigue, explicitly considered and

addressed each of these records.   Moreover, careful review of these citations indicates that

Plaintiff reported increased fatigue on only twelve of these occasions.   (R. 232, 376–79, 387–88,

483–86, 540, 549, 582, 594–95, 599 622–23, 635–36, 654–55.)   In twenty-two of these citations,

fatigue was not mentioned as a symptom.   (R. 355, 358–63, 390, 422, 466–70, 515–20, 527,

---

2015), a consultative physician did not examine the claimant and reviewed only sixty-one pages
of medical records, which included only treatment from a six-week period and an incomplete
report from a single examination.   Id. at *4–5.   That consultative physician was not provided
with records for almost a year afterwards, meaning that the ALJ was left to independently
interpret those records.   Id. at *5.   The court found that the examiner's opinion was limited by
the medical evidence on which it was based and which did not properly describe the claimant.
Id. at *10.   By contrast in this case, Dr. Yankelevich had the opportunity to examine Plaintiff
and render an opinion based on his own observations.   Moreover, his assessment was fully
consistent the remaining medical evidence of record and was not undermined by any subsequent

529, 533, 545–47, 554, 557, 561, 571–73, 580, 584, 590, 592, 603–04, 642, 644, 657.)   More

notably, in eighteen of the citations—the latest of which is dated July 2012—Plaintiff specifically

denied experiencing increased fatigue.   (R. 257, 333, 350, 353, 368–70, 372–74, 396–98,

450–54, 456–58, 460–62, 475–77, 479–81, 576, 607, 618–19, 633, 646–48, 650–52.)   No

doctor, treating or consultative, ever opined that Plaintiff would be limited by his alleged fatigue.

Finding no error in the ALJ's failure to include fatigue in any RFC or hypothetical to the

vocational expert, the Court overrules this Objection.

## IV.    CONCLUSION

In light of the foregoing, the Court denies Plaintiff's Objections to the Report and

Recommendation.   The ALJ issued a thorough opinion that clearly discussed almost every

relevant medical record before reaching a finding of no disability.   Having had the benefit of this

opinion, the Magistrate Judge's comprehensive Report and Recommendation, and our own

thorough review of the record, the Court finds the ALJ's decision to be without legal error and

well supported by substantial evidence.

---

medical notes.